Nos. 24-4156 (L), 24-4175

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

MARK ZAVISLAK,

*Plaintiff-Appellant/Cross-Appellee*

v.

NETFLIX, INC.

*Defendant-Appellee/Cross-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:21-cv-01811-EJD
**(The Honorable Edward J. Davila)**

# APPELLEE'S ANSWERING BRIEF/CROSS-APPELLANT'S OPENING BRIEF

CHRISTOPHER J. RILLO (#112009)
RAERANI REDDY (#340475)
CATHERINE SCOTT (#334420)
BAKER BOTTS L.L.P.
101 CALIFORNIA STREET
SUITE 3200
SAN FRANCISCO, CA 94111
(415) 291-6200

AARON M. STREETT (#24037561)
CHRISTOPHER E. TUTUNJIAN (#24110460)
BAKER BOTTS L.L.P.
910 LOUISIANA STREET
HOUSTON, TX 77002

*Counsel for Defendant-Appellee/Cross-Appellant Netflix, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, Netflix, Inc. makes the following disclosure:

Netflix, Inc. discloses that it has no parent company, and no public company owns ten percent (10%) or more of Netflix, Inc.

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF JURISDICTION .......... 2

III. ISSUES PRESENTED FOR REVIEW .......... 2

IV. STATEMENT OF THE CASE .......... 3

A. The Plan .......... 3

1. WRAP Plan .......... 5

2. Collective Health SPD .......... 5

3. Delta Dental Benefit Booklet .......... 6

4. VSP EOC .......... 6

5. The Collective Health SBC, Delta Dental SBC, and VSP SBC .6

B. Netflix does not receive Zavislak's initial request for Plan documents, but responds to his follow-up request within eight days .......... 7

C. Zavislak requests additional documents, claiming they are required under section 104 .......... 10

1. Four Claims Administration Agreements .......... 11

2. Eight Ancillary Documents .......... 13

a. Collective Health's Plan Matrix and Plan Design Change Confirmations .......... 13

b. Confirmations of Summary Plan Description .......... 14

c. Anthem's Prior Authorization List .......... 14

d. Four Anthem Internal Documents .......... 15

D. Procedural History .......... 15

1. Zavislak files suit. .......... 15

2. The parties agree to a trial on the papers, and in lieu of a trial with live testimony, they stipulate for the court to use their

cross-motions for summary judgment and proposed findings of fact and conclusions of law as a trial record. ..........................17

3. The district court finds that Netflix fulfilled its obligations under section 104 by providing the seven Governing Plan Documents but nevertheless imposes statutory penalties. ........19

V. SUMMARY OF THE ARGUMENT ..........................................................21

VI. ARGUMENT ..........................................................................................23

A. Standard of Review ..........................................................................23

1. The clear error standard applies to Zavislak's appeal. ............23

2. Netflix's cross-appeal is reviewed de novo. ............................25

B. The district court correctly held that section 104 requires disclosure of only those documents that provide participants with information about the plan and their benefits. ......................................................26

1. *Hughes* and *Shaver* narrowly interpret section 104's disclosure obligations. .......................................................................28

2. The Ninth Circuit's narrow reading of section 104 is reflected in lower court decisions. .......................................................33

3. Zavislak's interpretation of section 104 is irreconcilable with this Court's precedent. .........................................................36

C. The district court correctly found that the CAAs and Ancillary Documents were not subject to disclosure under section 104. ..........40

1. The district court individually reviewed each document under controlling law and made appropriate findings. ......................41

2. The district court properly considered expert and testimonial evidence. ..................................................................................43

3. Zavislak fails to identify any clear error. .................................45

D. The district court erred in awarding penalties to Zavislak under section 502. ...................................................................................47

1. The EBSA Orders suspended section 502's disclosure deadlines. ...................................................................................48

2. The district court ignored that Zavislak only requested penalties from February 26, 2021, onward. ............................................50

VII. CONCLUSION.......................................................................................53

# TABLE OF AUTHORITIES

## CASES

*Anderson v. City of Bessemer City, North Carolina*,
470 U.S. 564 (1985) .......... 24, 40-41

*Becker v. Williams*,
777 F.3d 1035 (9th Cir. 2015) .......... 30, 38

*Corby v. Unum Life Ins. Co. of Am.*,
No. C 09-5890 WHA, 2010 WL 3768040 (N.D. Cal. Sept. 21, 2010) .......... 35, 45

*Curtiss–Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) .......... 29, 31

*Darensburg v. Metro. Transp. Comm'n*,
636 F.3d 511 (9th Cir. 2011) .......... 24

*Est. of Barton v. ADT Sec. Servs. Pension Plan*,
820 F.3d 1060 (9th Cir. 2016) .......... 30

*Grimm v. City of Portland*,
971 F.3d 1060 (9th Cir. 2020) .......... 33

*Gurasich v. IBM Ret. Plan*,
No. 14-CV-02911-DMR, 2016 WL 362399 (N.D. Cal. Jan. 29, 2016) .......... 35

*Haug v. Midstate Mech., Inc.*,
No. CV-11-1584-PHX-JAT, 2012 WL 2091531 (D. Ariz. June 11, 2012) .......... 28

*Hillis v. Heineman*,
626 F.3d 1014 (9th Cir. 2010) .......... 51

*Hively v. BBA Aviation Ben. Plan*,
331 F. App'x 510 (9th Cir. 2009) .......... 32-34

*Hively v. BBA Aviation Benefit Plan*,
No. 3:05-CV-214 TMB, 2007 WL 9718331 (D. Alaska June 28, 2007), ... 34, 36

*Hughes Salaried Retirees Action Comm. v. Adm'r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) (en banc).......1, 7, 19, 21, 26-30, 32, 37-40 42

*In re Amy*,
710 F.3d 985, 987 (9th Cir. 2013) ....................................................................39

*Int'l Ladies' Garment Workers' Union, AFL-CIO v. Sureck*,
681 F.2d 624 (9th Cir. 1982), ...........................................................................25

*Jeff D. v. Otter*,
643 F.3d 278 (9th Cir. 2011) ............................................................................23

*Katie A., ex rel. Ludin v. Los Angeles Cnty.*,
481 F.3d 1150 (9th Cir. 2007) ..........................................................................44

*Kayes v. Pacific Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) ............................................................................26

*Kearney v. Standard Ins. Co.*,
175 F.3d 1084 (9th Cir. 1999) (en banc) ..........................................................23

*Lee v. ING Groep, N.V.*,
829 F.3d 1158 (9th Cir. 2016) ..........................................................................31

*Leeson v. Transamerica Disability Income Plan*,
671 F.3d 969 (9th Cir. 2012) ............................................................................26

*Metaxas v. Gateway Bank F.S.B.*,
No. 20CV01184EMCDMR, 2022 WL 972039 (N.D. Cal. Mar. 31, 2022).......35

*Penwell v. Providence Health & Services*,
No. 2:19-CV-01786-RAJ, 2021 WL 1222663 (W.D. Wash. Mar. 31, 2021).. 35, 36, 45

*Scharff v. Raytheon Co. Short Term Disability Plan*,
581 F.3d 899 (9th Cir. 2009) ............................................................................31

*Shaver v. Operating Engineers Local 428 Pension Tr. Fund*,
332 F.3d 1198 (9th Cir. 2003) ................19, 21, 26, 28, 30, 32, 34, 38-40, 42, 47

*Truong v. KPC Healthcare, Inc.*,
No. 8:23-CV-01384-SB-BFM, 2024 WL 4867558 (C.D. Cal. Sept. 9, 2024)...34

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) .......................................................... 24, 26

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)..........................................................................51

**STATUTES**

29 U.S.C. § 104(b)(4).........................................................................29

29 U.S.C. § 1001(b) ...........................................................................31

29 U.S.C. § 1024(b)(4)................................................................ 7, 27-28

29 U.S.C. § 1148 ...............................................................................49

Employee Retirement Income Security Act of 1974, § 502(c)(1), 29 U.S.C. §
1132(c)(1) ........................................................................ 16, 25, 48, 51

**OTHER AUTHORITIES**

29 C.F.R. § 2560.503-1(h)(2)(iii) .........................................................31

29 C.F.R. § 2575.502c-l.................................................................. 48-49

*Cty. of Santa Clara Pub. Health Dep't.*, Order of the Health Officer of the County of Santa Clara Establishing Mandatory Risk Reduction Measures Applicable to All Activities and Sectors to Address the Covid-19 Pandemic (July 2, 2020) ....8

*Cty. of Santa Clara Pub. Health Dep't.*, Order of the Health Officer of the County of Santa Clara Establishing Revised Mandatory Risk Reduction Measures Applicable to All Activities and Sectors to Address the Covid-19 Pandemic (Oct. 5, 2020) ..............................................................................8

*Cty. of Santa Clara Pub. Health Dep't.*, Santa Clara County Health Officer Advisory on Covid-19 Risk Reduction Measures (Mar. 23, 2021)......................8

Dep't of Labor Advisory Op. 97-11A (Apr. 10, 1997) ..........................................43

Fed. R. Civ. P. 52(a)(1) ........................................................................ 18, 23

Fed. R. Civ. P. 52(a)(6) ........................................................................ 23, 40

*U.S. Dep't of Labor*, EBSA Disaster Relief Notice 2020-01: Guidance and Relief for Employee Benefit Plans Due to the COVID-19 (Novel Coronavirus) Outbreak (2020) ........................................................................ 16, 20, 49

*U.S. Dep't of Labor*, EBSA Disaster Relief Notice 2021-01: Guidance on Continuation of Relief for Employee Benefit Plans and Plan Participants and Beneficiaries Due to the COVID-19 (Novel Coronavirus) Outbreak (2021) .. 16, 49

# I. INTRODUCTION

Plaintiff-Appellant/Cross-Appellee Mark Zavislak was a beneficiary of Defendant-Appellee/Cross-Appellant Netflix, Inc.'s self-funded health plan (the "Plan"). In the middle of the COVID-19 Pandemic, when Netflix offices were closed under mandatory work-from-home restrictions and during a holiday, he mailed a letter to Netflix requesting various Plan-related documents. Netflix responded by providing him what was needed to understand his benefits, which is all that was required under Ninth Circuit precedent. Specifically, in this Circuit, a plan administrator must disclose only those documents "that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes Salaried Retirees Action Comm. v. Adm'r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc) (cleaned up).

The district court correctly rejected Zavislak's claim that he was entitled to documents that were either duplicative or did not contain any benefits information. However, it mistakenly proceeded to impose monetary penalties on Netflix that Zavislak did not even seek and that were precluded by the Department of Labor's suspension of time deadlines at the time.

Thus, this Court should affirm the district court's finding that Netflix satisfied its disclosure obligations, and it should reverse the district court's imposition of monetary penalties.

## II. STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over Zavislak's claims against Netflix under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f), because this action arises under the Employee Retirement Income Security Act of 1974 ("ERISA").

On June 7, 2024, the district court entered final judgment. 1-ER-2. Zavislak filed his timely notice of appeal on July 5, 2024, 4-ER-847, and Netflix filed a timely notice of cross-appeal on July 8, 2024. 4-SER-790. This Court has jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

## III. ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in finding that Netflix fulfilled its disclosure obligations under section 104 of ERISA, 29 U.S.C § 1024(b)(4), by providing seven Plan documents to Zavislak that conveyed the Plan's benefits and obligations sufficiently to inform a participant where he stands with respect to his rights, duties, and obligations with the Plan.

2. Whether the district court erred in imposing monetary penalties on Netflix beginning January 4, 2021, where the district court found that Netflix

fulfilled its disclosure obligation on February 24, 2021; Zavislak alleged Netflix's purported violation of its disclosure obligation did not occur until February 26, 2021, and conceded that he was only requesting statutory penalties beginning February 26, 2021, for failure to produce additional documents; and the Department of Labor's ("DOL") Employee Benefits Security Administration ("EBSA") Disaster Relief Notices 2020-01 and 2021-01, suspended all disclosure deadlines under section 104 and precluded any statutory penalties for failing to timely produce documents.

## IV. STATEMENT OF THE CASE

### A. The Plan

Netflix maintains a self-funded plan, the *Netflix, Inc. Health and Welfare Plan* ("the Plan"), which appoints Netflix as the Plan administrator. 1-ER-4 ¶ 1. Zavislak's spouse, Chen Zheng, was a Netflix employee and participant of the Plan, and Zavislak received Plan benefits through Zheng's participation. 1-ER-4 ¶ 2.

There are seven documents that operate the Plan: (1) the Netflix, Inc. Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description ("WRAP Plan"), 2-SER-280–331; (2) the Collective Health HSA Summary Plan Description ("Collective Health SPD"), 2-SER-332–436; (3) the Delta Dental Employee Benefit Booklet ("Delta Dental Benefit Booklet"), 2-SER-437–67; (4) the Vision Services Plan Evidence of Coverage ("VSP EOC"), 2-SER-468–90; (5) Summary of Benefits and Coverages for VSP ("VSP SBC"), 2-SER-501–03; (6)

Summary of Benefits and Coverages for Collective Health ("Collective Health SBC"), 2-SER-491–97; and (7) Summary of Benefits and Coverages for Delta Dental ("Delta Dental SBC"), 2-SER-498–500; (collectively, the "Governing Plan Documents"). 1-ER-7–8 ¶ 15.

These seven Governing Plan Documents are member-facing documents that describe coverages, exclusions, participant obligations, and other detailed information; together, they govern the provision of participants' benefits. 1-ER-11 ¶ 32. Netflix consults these Governing Plan Documents if a member or participant has an inquiry about their benefits; it does not consult any other documents to interpret its Plan. 1-ER-13 ¶ 39. The WRAP Plan, Collective Health SPD, Delta Dental Benefits Booklet, and VSP EOC delineate the Plan's medical benefits and summarize the benefit welfare plans, detailing benefits, rights, and claim procedures. 1-ER-11 ¶ 30–32. They are intended to be read with the other furnished Plan documents as a comprehensive set. 1-ER-11 ¶ 32.

At all relevant times, Zavislak's spouse had access to the benefits information, the Governing Plan Documents, and relevant contact information to learn more about their benefits through Netflix's intranet, which is available to all employees. 1-ER-11 ¶ 29.

### 1. WRAP Plan

The WRAP Plan expressly states that it is the governing Plan document and wraps around the Plan documents to combine all benefits into one Plan. 1-ER-11 ¶ 31. It identifies Plan features including the Dental and Vision Plans. 1-ER-11–12 ¶¶ 30–33.

### 2. Collective Health SPD

The 104-page Collective Health SPD explains Netflix's Plan in comprehensive detail. 2-SER-333-436. It "is a binding statement of Plan benefits" that is furnished to beneficiaries. 1-ER-12 ¶ 35. It incorporates by reference the Preventative Care Guide ("PCG") for a complete list of preventive care, which is a separate document furnished at no cost to participants on request. 1-ER-12 ¶ 35, 1-ER-19 ¶ 61. The Collective Health SPD also incorporates by reference Anthem's Prior Authorization List ("PAL") which provides a detailed list of services that are reviewed or authorized in advance by Anthem. 1-ER-12–13 ¶ 35. Although not Netflix Plan Documents, Zavislak requested and received copies of the PCG and PAL free of charge after contacting Collective Health, as instructed in the SPD. 1-ER-53 ¶ 162.

The Collective Health SPD details, *inter alia,* eligibility, enrollment, contribution and costs, preventive care, non-preventive care, and claims procedures. 1-ER-11-12 ¶¶ 32, 35, 2-SER-333-436. It describes in detail plan coverages,

limitations, and out of pocket costs. 1-SER-257-258; 2-SER-333-436. While the document is a comprehensive recitation of the Plan, it encourages participants with questions about coverage to contact Collective Health on a toll-free telephone number. 1-ER-12 ¶ 35. Zavislak admitted that he did not read the SPD in full before filing suit. 3-SER-514 at 30:02–31:01 (admitting he has not read the entire SPDs), 95:15–23 (admitting to not reading the full documents).

### 3. Delta Dental Benefit Booklet

The Delta Dental Benefit Booklet provides a complete description of participants' rights. 1-ER-13 ¶ 36. It describes coverages, exclusions, and participant obligations, and is the primary resource consulted by Delta Dental in answering participant questions. 1-ER-44 ¶ 132.

### 4. VSP EOC

The VSP EOC describes the benefits available to covered persons and participant responsibilities. 1-ER-12 ¶ 34. It is the primary document for benefits information that is distributed to participants, and VSP refers participants to the EOC when they have questions about their benefits. 1-ER-12 ¶ 34. It instructs covered persons to contact VSP's customer service department for more information. 1-ER-16 ¶ 52.

### 5. The Collective Health SBC, Delta Dental SBC, and VSP SBC

The three summaries of benefits and coverages ("SBCs") from Collective Health, Delta Dental, and VSP are plain-language explanations of the Collective

Health SPD, the Delta Dental Benefits Booklet, and the VSP EOC. 1-ER-13 ¶ 37. Together, these three documents summarize the terms and benefits in the SPDs. Health insurance companies and group plans are required to provide SBCs to participants. 1-ER-13 ¶ 38.

### B. Netflix does not receive Zavislak's initial request for Plan documents, but responds to his follow-up request within eight days.

Section 104 of ERISA provides in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). This Court has held that section 104 does not create a general disclosure obligation—instead, it requires disclosure of documents "that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes Salaried Retirees Action Comm. v. Adm'r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc) (cleaned up).

In the middle of the COVID-19 Pandemic, Zavislak mailed a broad, unspecified request for documents postmarked January 4, 2021 (hereinafter "January Letter"). 1-ER-6 ¶ 9; 2-ER-273-75. Netflix did not timely receive this letter due to

circumstances beyond its control. 1-ER-6–7 ¶¶ 10, 11. Moreover, due to the Pandemic, the DOL's EBSA Order had suspended all time deadlines contained in Title I of ERISA, including the deadlines to produce documents under section 104.

First, the January Letter was simply addressed to Netflix's corporate headquarters (not its benefits department) which, at the time, was operating on a limited basis due to the COVID-19 Pandemic and a County of Santa Clara Order[1] requiring businesses to maximize the number of personnel working remotely. 1-ER-6-7 ¶ 10. At the time, Netflix instructed employees that could work from home to do so. 1-ER-6–7 ¶ 10. The letter was also mailed during the New Year's holiday.

Second, the January Letter did not identify Zavislak's status with the Plan—that he was a beneficiary through Zheng's Plan interest—nor that his spouse had a

---

[1] *See Cty. of Santa Clara Pub. Health Dep't.*, Order of the Health Officer of the County of Santa Clara Establishing Mandatory Risk Reduction Measures Applicable to All Activities and Sectors to Address the Covid-19 Pandemic (July 2, 2020), https://files.santaclaracounty.gov/exjcpb1751/migrated/07-02-20-Health-Officer-Order_0.pdf?VersionId=SwAgUiSls73ERu9kabK9S7smFOc9maNQ
*See also Cty. of Santa Clara Pub. Health Dep't.*, Order of the Health Officer of the County of Santa Clara Establishing Revised Mandatory Risk Reduction Measures Applicable to All Activities and Sectors to Address the Covid-19 Pandemic (Oct. 5, 2020), https://files.santaclaracounty.gov/exjcpb1751/migrated/order-mandatory-risk-reduction-measures-applicable-revised-10-5-20_0.pdf?VersionId=ooNp617mxSI2xiCpLQMvBf.jQFER9BOi
*See also Cty. of Santa Clara Pub. Health Dep't.*, Santa Clara County Health Officer Advisory on Covid-19 Risk Reduction Measures (Mar. 23, 2021), https://files.santaclaracounty.gov/exjcpb1751/migrated/03-23-2021-Health-Officer-Advisory-COVID19-Risk-Reduction%20(Updated)_7.pdf?VersionId=mdl7LRtS0zHRz3CcA294lUf1kTWLfbxI

different surname. 1-ER-57 ¶ 177, n. 15; 2-ER-273–75. It was signed only by Zavislak, whom Netflix could not identify. 2-ER-273–75. Compounding this ambiguity, it did not request documents under section 104, but broadly requested three categories of documents: (1) SPDs, (2) "documents governing the operation of the respective plan," and (3) claims procedures compliant with 29 CFR § 2560.503-1(b). 2 ER-273-75. Due to these uncontrollable circumstances, Ms. Dana Armanino, the Benefits Manager at Netflix, did not timely receive Zavislak's January Letter. 1-ER-7 ¶ 11.

Zavislak sent a follow-up request for documents on February 11, 2021 ("February Letter"), to which Netflix responded within eight days and provided the seven Governing Plan Documents. 1-ER-7–8 ¶¶ 13–15. This second request was addressed to Netflix's registered agent for service of process, who received it on February 16, 2021. 2-ER-276-81. On February 17, 2021, in-house counsel for Netflix, Mr. Jon Hicks, contacted Zavislak to clarify his beneficiary status and relevant plans. 2-ER-282-86; 1-ER-7 ¶ 14. Eight days after receiving the February Letter, on February 24, 2021, Netflix provided Zavislak with the Governing Plan Documents. 1-ER-7-8 ¶ 15; 2-ER-282–86.

Throughout the relevant period, Netflix acted in good faith and discharged its responsibilities to Zavislak. 1-ER-57 ¶ 178. Mr. Hicks, via email, stayed in constant communication with Zavislak and encouraged Zavislak to contact him directly to

resolve any issues. 2-ER-282–86. Mr. Hicks diligently responded to his questions, often within a day, sometimes within an hour, and even on weekend mornings. 2-ER-282–86. Netflix made multiple efforts to clarify exactly what Zavislak was requesting and produced the seven Governing Plan Documents as soon as administratively possible. 2-ER-282–86. During the entire time Zavislak did not have a pending health claim or even questions about his or his family's coverage. 1-52-53 ¶¶ 167–68; 1-ER-60 ¶ 189 n. 16; 1-SER-268–69, 273–74.

### C. Zavislak requests additional documents, claiming they are required under section 104.

Although the seven Governing Plan Documents that Netflix furnished to Zavislak would later be found by the district court to have fulfilled Netflix's statutory duty under section 104, (*see* 1-ER-41 ¶ 123, ER-43-56, ¶¶ 130–73), on February 26, 2021, Zavislak demanded *additional*, ancillary documents and contracts related to the Plan, claiming they were required under section 104. 2-ER-282-86. Netflix responded that same day that there were no other documents in its possession beyond what had already been provided to Zavislak. 1-ER-9 ¶¶ 20–22.

Zavislak claimed that Netflix was required to provide claims administration agreements and contracts referenced in the Governing Plan Documents. 4-ER-835-46. On appeal, Zavislak identifies 12 documents that he claims he was entitled to

receive. *See* Appellant's Opening Brief, 9th Cir. ECF 12.1, ("AOB") at 25-26.[2] First, he identifies four claims administration agreements (also referred to as administrative services agreements) for Anthem, Collective Health, Delta Dental, and VSP (together, the "CAAs"). *Id.* at 25. Second, he identifies eight additional documents: Collective Health's Plan Matrix; Collective Health's Plan Design Change Confirmations ("PDCCs"); Collective Health's Confirmation Summary Plan Description ("CSPDs"); Anthem's Prior Authorization List ("PAL"); Anthem's Medical Management Form; Anthem's Utilization Review Process Document; Anthem's Grievance & Appeals for Health and Plan Members Policy; and Anthem's Enterprise Grievances and Appeals Operational Guideline (together, the "Ancillary Documents"). *Id.* at 26.

### 1. Four Claims Administration Agreements

Netflix enters into written CAAs with its four service providers, Collective Health, Delta Dental, VSP, and Anthem, to furnish claims administration and processing services to its Plan. 1 ER 13-14 ¶ 41.

The Netflix-Collective Health Administration Agreement governs the relationship between Netflix and third-party service provider Collective Health. 1-ER-49 ¶ 149; 1-SER-263–64. It is a confidential business agreement between

---

[2] Before the district court, Zavislak claimed he was entitled to additional documents beyond the 12 he identifies on appeal. 1-ER-40 ¶ 122.

Netflix and Collective Health that is not provided to participants. 1-ER-15 ¶ 46. Under the agreement, Netflix retained Collective Health to provide certain services relating to claims administration that "are ministerial and/or advisory in nature." 1-ER-14-15 ¶ 44. The agreement does not address benefits provided by Plan. 1-ER-49 ¶ 149.

The Netflix-Anthem Administrative Agreement governs the relationship between Netflix and Anthem. 1-SER-265. It is a confidential business agreement that is not provided to participants. *Id.* Under the agreement, Anthem provides claims utilization reviews, appeals services, and allows Netflix to use the Anthem provider network. 1-ER-46 ¶ 138. Anthem does not provide benefits to participants nor does the agreement provide any terms or benefits to participants. 1-ER-46 ¶ 138.

The Netflix-VSP Agreement governs the Netflix-VSP relationship. 1-ER-15-16 ¶ 49; 1-ER-47 ¶ 141. It references the WRAP plan to determine the terms and conditions of coverage. 1-ER-49 ¶ 146. It attaches a schedule of benefits which restates the benefits information contained in the VSP EOC, which was provided to Zavislak, and includes negligible additional claims processing information.[3] 1-ER-47 ¶ 141; 1-ER-48 ¶ 144–45. The district court found the three references to claims

[3] It states that a participant has 365 days to submit a claim or, if unable to reasonably submit the claim, may still submit the claim within the year, and has six years to file legal action against VSP for non-provision of benefits. 1-ER-48 ¶ 144.

in the Netflix-VSP Agreement related to claims processing and need not be disclosed pursuant to a section 104 request. 1-ER-48 ¶ 145.

The Delta Dental Administration Agreement is an agreement for an employee dental benefit plan between Netflix, as the Plan sponsor, and Delta Dental. 1-ER-15 ¶ 47. The first seven pages of the agreement address services that Delta Dental will provide under the contract with Netflix; Appendix A addresses administrative contract variables. 1-ER-43-44 ¶ 131. None of these portions of the agreement discuss Plan benefits. 1-ER-43-44 ¶ 131. The agreement details Delta Dental's responsibilities to serve Netflix as an Administrator for the provision of dental services. 1-ER-43-44 ¶ 131. The agreement attaches the Delta Dental Employee Benefits Booklet as Exhibit B, which Zavislak received, 1-ER-44 ¶ 132, and includes no other benefits information, 1-ER-15 ¶ 47.

### 2. Eight Ancillary Documents

#### a. Collective Health's Plan Matrix and Plan Design Change Confirmations

The Plan Matrix and the PDCCs are Collective Health's internal documents that form a part of its system and are used to draft SPDs. 1-ER-50-51 ¶ 154. The Plan Matrix is an internal spreadsheet generated by Collective Health that contains codes, procedures, and codes to enter plan data. 1-ER-17-18 ¶¶ 57–58. The Plan Matrix is used downstream to populate documents such as the SPD. 1-ER-17-18 ¶¶ 57–58; 1-ER-50 ¶ 154. This document was never produced as the court rejected

Zavislak's attempts to obtain this document, and he never appealed the discovery decision to the district court. 3-SER-700, 702 at 1 ("[T]he request seeks documents that go beyond Netflix's ERISA obligations and therefore are irrelevant and not proportional to the needs of the case."). Although he has never seen the document, Zavislak contends that it should have been produced. AOB at 57.

The PDCC is a document that Collective Health requires Netflix to sign to confirm any mid-year changes to the SPD. 1-ER-18 ¶ 59. The PDCC then amends the Plan Matrix to internally update Collective Health's system. 1-ER-50-51 ¶ 154.

The Plan Matrix and the PDCCs do not delineate the scope of benefits under the Plan. 1-ER-51 ¶ 155.

#### b. Confirmations of Summary Plan Description

The Confirmation of Summary Plan Description is a one-page implementation document which simply documents Netflix's approval of the SPD prepared by Collective Health and bears executed signatures. 1-ER-19-20 ¶ 64. It contains no information about beneficiaries' rights or benefits under the Plan. 1-ER-51-52 ¶¶ 157–58.

#### c. Anthem's Prior Authorization List

Anthem promulgates the PAL to maintain a list of medical treatments that require prior authorization. 1-ER-20 ¶ 65. The PAL is incorporated by reference in the Collective Health SPD. 1-ER-52 ¶ 160. The list of services that require prior

authorization is also accessible on Anthem's website to all participants and beneficiaries free of charge. 1-ER-20 ¶ 65. Zavislak received the PAL free of charge after contacting Collective Health, as instructed in the SPD. 1-ER-53 ¶ 162.

#### d. Four Anthem Internal Documents

Anthem promulgates the Medical Management Form, Grievances and Appeals for Health Plan Members Policy, Enterprise Grievances and Appeals Operational Guideline, and the Utilization Review Process. 1-ER-20-21 ¶¶ 66–69 Netflix does not possess any of these documents because they are internal to Anthem and provide procedures for claims adjudication. 1-ER-21 ¶¶ 69. Anthem is not a provider of benefits to participants, nor does it process claims. 1-ER-54 ¶ 166. Instead, it provides utilization and case management services to Collective Health. *Id.* As the district court found, these documents do not govern the Plan, do not provide new benefits information, are claims documents, and are outside the scope of Zavislak's section 104 request. 1-ER-55 ¶ 168.

## D. Procedural History

### 1. Zavislak files suit.

Nineteen days after Netflix provided Zavislak with the seven Governing Plan Documents, Zavislak filed his initial Complaint on March 15, 2021. 3-SER-779–88. In his Amended Complaint, Zavislak acknowledged receiving the Governing Plan Documents on February 24, 2021, but claimed that Netflix was also required to provide the four CAAs and eight Ancillary Documents under section 104. 4-ER-

835-46. Pursuant to section 502 of ERISA, 29 U.S.C. § 1132, Zavislak requested statutory penalties against Netflix from February 26, 2021, to the date of the district court's order. 1-ER-56 ¶ 174; *see* 29 U.S.C. § 1132(c)(1)(B) (imposing monetary penalties for failure to respond to request for information within 30 days).[4] Zavislak did not request penalties in connection with the production of the Governing Plan Documents, but requested penalties from February 26, 2021, onward for Netflix's alleged failure to provide the CAAs and Ancillary Documents. 1-SER-234 ¶ 536. Zavislak requested these penalties even though the DOL had suspended all time deadlines contained in Title I of ERISA, including the deadlines to produce documents under section 104.[5]

Zavislak testified at his deposition that he did not read the entire Collective Health SPD before filing this lawsuit and that he has not read any of the SPDs or EOCs in full. 3-SER-514 at 30:02–31:01 (admitting that he has not read the entire

---

[4] Zavislak also sought injunctive relief compelling Netflix to maintain the Plan according to a written instrument, which the district court denied. 1-ER-21 ¶ 70; 1-ER-64-65 ¶ 202. Zavislak abandons that request on appeal.

[5] U.S. Dep't of Labor, EBSA Disaster Relief Notice 2020-01: Guidance and Relief for Employee Benefit Plans Due to the COVID-19 (Novel Coronavirus) Outbreak (2020), https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/disaster-relief/ebsa-disaster-relief-notice-2020-01 ("EBSA Order 2020-01"), as reinforced under U.S. Dep't of Labor, EBSA Disaster Relief Notice 2021-01: Guidance on Continuation of Relief for Employee Benefit Plans and Plan Participants and Beneficiaries Due to the COVID-19 (Novel Coronavirus) Outbreak (2021), https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/disaster-relief/ebsa-disaster-relief-notice-2020-01 ("EBSA Order 2021-01"), (together, "EBSA Orders").

SPDs), 3-SER-530 at 95:15–23 (admitting to not reading the full documents), 3-SER-537 at 122:03–09 (admitting that he did not read the entire 2020 VSP EOC but only looked at some pages). He also admitted he suffered no injury and failed to articulate what information he needed about his benefits. *Compare*, 3-SER-519 at 51:1–4 (testifying he suffered no harm), *with* 3-SER-692 at 18:24–26 (explaining that he was harmed because one blood test was not paid for (even though it was explained in the seven Governing Plan Documents)). And while he baldly concluded that he was unable to understand his benefits "solely according to Netflix's seven documents[,]" 3-SER-692 at 18:24-26, he was never able to articulate any information that was lacking or contradictory, 1-SER-258. Nor could Zavislak articulate how the information in the CAAs and Ancillary Documents—which he had through discovery—was relevant to his benefits information. 2-ER-152-53 (counsel for Zavislak at hearing on cross-motions for summary judgment unable to explain what information beneficiary learns from third-party contracts).

**2. The parties agree to a trial on the papers, and in lieu of a trial with live testimony, they stipulate for the court to use their cross-motions for summary judgment and proposed findings of fact and conclusions of law as a trial record.**

The parties filed cross-motions for summary judgment. 1-SER-243–78; 3-SER-666–99. At the October 20, 2022, hearing on the motions, the court observed that the bench trial set for January would essentially involve only the exhibits filed and the motions, and the court questioned whether a trial with live testimony was

needed. 2-ER-129–30. The parties agreed that a live trial was unnecessary and that they would submit proposed findings of fact and conclusions of law to be taken under submission with the motions. 1-ER-21–22 ¶¶ 71–72.

This agreement was confirmed in writing, reflected on the docket, and confirmed with the district court through email. *See* Motion to Supplement the Record, 9th Cir. ECF 32.1, Ex.1 & 2[6]; 4-ER-872 at Dkt. 200; 4-ER-872-873 at Dkt. 204. After the parties submitted proposed findings of fact and conclusions of law, Netflix sought additional oral argument. Zavislak opposed, arguing the record was sufficient. 4-ER-874 at Dkt. 218. In accordance with the parties' agreement, the district court reviewed the parties' arguments and evidence and issued "findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)." 1-ER-3-4; *see also* 1-ER-21 ¶ 71 (noting that district court "instructed the parties to submit their proposed findings of fact and conclusions of law under Federal Civil Procedure 52."); Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a

[6] Ms. Robinson (Courtroom Deputy to the Honorable Edward J. Davila) confirmed with the parties that "the crux of the parties case to be presented at trial are otherwise presented in the briefing (and to be filed findings) of the summary judgment motion, and that the Court may otherwise vacate the trial dates and resolve the matter through decision on the motion submission and proposed findings and conclusions?" Zavislak never raised the issue that the court had no authority to conduct a trial or issue Rule 52 findings of Fact and Conclusions of Law until he filed his opening brief in this Court. He never raised the issue in his proposed findings or in a motion for new trial.

jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.”).

### 3. The district court finds that Netflix fulfilled its obligations under section 104 by providing the seven Governing Plan Documents but nevertheless imposes statutory penalties.

Applying this Court’s precedents in *Hughes Salaried Retirees Action Comm. v. Adm’r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) (en banc), and *Shaver v. Operating Engineers Local 428 Pension Tr. Fund*, 332 F.3d 1198 (9th Cir. 2003), the district court found that Netflix was not required to provide any of the CAAs or Ancillary Documents in response to Zavislak’s section 104 request. 1-ER-43 ¶ 130, 1-ER-50 ¶ 152, 1-ER-53 ¶ 163, 1-ER-55 ¶ 169. Under those decisions, section 104 requires disclosure of documents “that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.” *Hughes*, 72 F.3d at 690 (cleaned up). According to the district court, the seven Governing Plan Documents that Netflix sent Zavislak sufficiently conveyed to participants their rights and obligations under the Plan. 1 ER-42-43 ¶ 129, 1-ER 56 ¶ 173. Thus, the district court found that on February 24, 2021, Netflix fully

discharged its statutory duty to provide Zavislak with the required Plan documents. 1-ER 56 ¶ 173.

Although the district court found that Netflix complied with its disclosure duty on February 24, 2021, and Zavislak requested penalties from only February 26, 2021, onward, it nevertheless proceeded to consider imposing discretionary penalties. 1-ER-56-57 ¶¶ 174–75. Additionally, it acknowledged that EBSA Order 2020-01 instructed the "suspension of deadlines during this time" due to the COVID-19 Pandemic. 1-ER-58 ¶ 180; EBSA Orders. The court found, due to the Pandemic's "exceptional circumstances" that "at the very least, the correct personnel never became aware of the [January] [L]etter." 1-ER-58 ¶ 180. And when Zavislak sent the February Letter on February 11, 2021, Netflix responded eight days after receiving it on February 16, 2021. 1-ER-58 ¶ 180. The court also found Netflix did not act in bad faith or engage in intentional misconduct. 1-ER-57 ¶ 178.

Despite acknowledging that Zavislak requested penalties from only February 26, 2021, onward and that DOL suspended deadlines during this time, the court still punished Netflix for untimely production with daily statutory penalties measured from January 4, 2021, to February 24, 2021, in the amount of $15 per day ($765 total). 1-ER-58-59 ¶¶ 181–84.

## V. SUMMARY OF THE ARGUMENT

Applying controlling precedent from this Court, the district court correctly concluded that Zavislak was not entitled to any CAAs or Ancillary Documents in response to his section 104 request. On appeal, Zavislak urges a reading of section 104 that is irreconcilable with this Court's prior decisions in *Hughes Salaried Retirees Action Comm. v. Adm'r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) (en banc), and *Shaver v. Operating Engineers Local 428 Pension Tr. Fund*, 332 F.3d 1198 (9th Cir. 2003). Under those cases, section 104 requires disclosure of documents "that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes*, 72 F.3d at 690 (cleaned up). In the absence of intervening higher authority, this Court is bound by those opinions. The district court, relying on *Hughes* and *Shaver*, properly articulated and applied the Ninth Circuit's narrow interpretation of section 104's disclosure obligations.

The four CAAs and eight Ancillary Documents that Zavislak demands are not subject to section 104 disclosure under *Hughes* and *Shaver*. The CAAs establish business relationships between Netflix and third-party providers and do not govern

or provide any new benefits information. The Ancillary Documents are not subject to disclosure because they are claims documents, internal third-party documents, or administrative documents that contain no benefits information. The seven Governing Plan Documents robustly conveyed the Plan's benefits and obligations more than sufficiently to inform a participant where he stands with his rights, duties, and obligations with the Plan. Duplicative benefits information in the CAAs or Ancillary Documents is irrelevant when the benefits information is fully contained within the Governing Plan Documents. Zavislak cannot articulate any missing information from the Governing Plan Documents that would be supplied by the other documents he requested.

Despite correctly holding that Netflix complied with its substantive obligations under section 104, the district court erred as a matter of law in awarding penalties to Zavislak under section 502(c)(1) for untimely production. That is because the DOL suspended time deadlines set forth in Title 1 of ERISA—including sections 104 and 502—pursuant to ERISA section 518, 29 U.S.C. § 1148, and Netflix could not have violated deadlines that were not in effect. Moreover, the district court erred when it granted greater relief than what Zavislak requested, calculating penalties from January 4, 2021, through February 21, 2021, onward even though Zavislak sought penalties from February 26, 2021, onward.

Accordingly, Netflix respectfully requests that this Court affirm the district court's conclusion that Netflix was only obligated under section 104 to produce the seven Governing Plan Documents. On cross-appeal, Netflix respectfully requests this Court reverse the district court's decision to award Zavislak penalties because there was no violation of section 502(c)(1)'s deadlines.

# VI. ARGUMENT

## A. Standard of Review

### 1. The clear error standard applies to Zavislak's appeal.

This case was tried without a jury, and the district court issued findings of fact and conclusions of law under Federal Rule of Civil Procedure 52. 1-ER-3-4; *see also* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."). The court did not hear live testimony but relied on the parties' arguments, written submissions, documentary evidence, and proposed findings of fact to issue its factual findings and conclusions of law pursuant to Rule 52. 1-ER-3-4; *see Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (en banc) ("We have affirmed bench trials on records in other cases."). The district court's factual findings are reviewed for clear error while purely legal conclusions are reviewed de novo. *Jeff D. v. Otter*, 643 F.3d 278 (9th Cir. 2011); *see also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous…."); *Anderson v. City of Bessemer City,*

*North Carolina,* 470 U.S. 564, 574 (1985) (clearly erroneous standard applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts"). Mixed questions of fact and law are addressed under the clear error standard used for factual findings. *See Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 518-19 (9th Cir. 2011).

Here, the district court's construction of section 104 is reviewed de novo, but its application of law to fact is reviewed for clear error. That is because the district court's determination whether section 104 required disclosure of the CAAs and Ancillary Documents turned on factual findings regarding the contents of those documents and what information they would have conveyed to Zavislak. *See United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc) ("[I]f the district court's application of fact to law requires an inquiry that is essentially factual, we review it as if it were a factual finding….") (citation and internal quotation marks omitted).

Zavislak's argument that this Court should review his appeal de novo is premised on his contention that the district court did no more than rule on cross-motions for summary judgment. AOB at 32. But that totally ignores the parties' and district court's agreement that the district court would treat the cross-motions for summary judgment as a record for a bench trial, review the arguments and

evidence submitted with the motion, and issue findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. *See supra* at 17–18. And the district court did precisely that. 1-ER-3-4. Zavislak's reliance on *Int'l Ladies' Garment Workers' Union, AFL-CIO v. Sureck*, 681 F.2d 624 (9th Cir. 1982), *rev'd on other grounds sub nom. INS v. Delgado*, 466 U.S. 210 (1984), is misplaced. AOB at 32. In that case, the parties filed cross-motions for summary judgment, and the district court made findings of fact. *Sureck*, 681 F.2d at 628. De novo review was appropriate because there was "no evidence in the record that the parties intended a trial on stipulated record which would suggest a clearly erroneous standard of review of the district court's findings." *Id.* at 629. Unlike the district court's unilateral actions in *Sureck*, the district court here did exactly what the parties requested when it used the summary judgment submissions as an agreed record for a bench trial and issued findings of fact. 1-ER-21–22 ¶¶ 71–72; 2-ER-129–30. Thus, clear error review is appropriate. *Sureck*, 681 F.2d at 629.

**2. Netflix's cross-appeal is reviewed de novo.**

Under section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), the court may in its "discretion" impose monetary penalties if a plan administrator fails to disclose the required documents under section 104 within 30 days. 29 U.S.C. § 1132(c)(1). Here, Netflix's contention on appeal is, given the EBSA Orders and the scope of relief requested by Zavislak, section 502(c)(1)(B) was inapplicable as a

matter of law. De novo governs because the Court need only construe ERISA and the EBSA Orders to determine that penalties are not available. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 974 (9th Cir. 2012) (The Ninth Circuit "review[s] de novo the district court's interpretation of ERISA."); *see also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1455 (9th Cir. 1995) ("The applicability of [another law] to ERISA is a question of law, which we review de novo."). In any event, "the first step of [this Court's] abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Hinkson*, 585 F.3d at 1261-62. "If the trial court failed to do so, [this Court] must conclude it abused its discretion." *Id.* at 1262.

### B. The district court correctly held that section 104 requires disclosure of only those documents that provide participants with information about the plan and their benefits.

The key issue on appeal is whether the district court erred in finding that ERISA section 104, 29 U.S.C. § 1024(b)(4), did not require Netflix to produce the four CAAs and eight Ancillary Documents requested by Zavislak. The district court properly applied *Hughes Salaried Retirees Action Comm. v. Adm'r. of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) (en banc), and *Shaver v. Operating Engineers Local 428 Pension Tr. Fund*, 332 F.3d 1198 (9th Cir. 2003), and correctly held that Netflix's disclosure of the seven Governing Plan Documents

on February 24, 2024, fulfilled its section 104 disclosure obligations. 1-ER-41–56 ¶¶ 124–73. Section 104 provides in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

Zavislak's appeal rests on two rules he purports to derive from the statute, *Hughes*, and *Shaver*. First, he argues that "*any* documents specifically enumerated, including *any* plan governing 'contract,' must be furnished by an employee benefit plan administrator." *See* AOB at 30 (emphases added). Second, he contends that any "other instruments" that "directly bear[] on the establishment and operation of the Plan" must be disclosed. *Id.* at 31. Thus, according to Zavislak, all four CAAs and all eight Ancillary Documents must be produced. *Id.* The problem for Zavislak is that his interpretation of section 104's disclosure obligations is irreconcilable with this Court's precedent. In this Circuit, section 104 requires disclosure of documents "that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Hughes*, 72 F.3d at 690 (cleaned up). Zavislak points to no

intervening higher authority that could justify a departure from this precedent, and to the extent he asks this Court to abandon its precedent in favor of a new reading of section 104, that is a request this Court cannot grant.

### 1. *Hughes* and *Shaver* narrowly interpret section 104's disclosure obligations.

Section 104 governs participants' requests for certain plan information and requires a plan administrator to furnish a limited set of plan documents. 29 U.S.C. § 1024(b)(4). Besides the enumerated plan documents—e.g., SPDs and annual reports—the statute requires disclosure of any "contract, or other instruments under which the plan is established or operated." *Id.* Circuits differ in how broadly they interpret the scope of section 104's disclosure obligations. *See Haug v. Midstate Mech., Inc.,* No. CV-11-1584-PHX-JAT, 2012 WL 2091531, at *3 (D. Ariz. June 11, 2012) ("[The Sixth Circuit's] approach is more permissive than that of the Ninth Circuit, which is itself more permissive than that of the Second or Fourth Circuits."). In *Hughes*, the en banc Ninth Circuit squarely rejected a generalized disclosure obligation in favor of a narrower reading of the statute, and this Court reaffirmed and applied that narrow approach in *Shaver*. *Hughes,* 72 F.3d 686; *Shaver,* 332 F.3d 1198.

In *Hughes*, the three-judge panel originally held that section 104 broadly "requires disclosure of all documents that are 'critical to the operation of the plan.'" 72 F.3d at 690 (citation omitted). The en banc Court, however, explained that this

interpretation of section 104 is too broad and "admits of no limiting principle"—it "create[d] a generalized disclosure obligation" under which "a plan administrator would be required to disclose virtually everything in its plan files upon request." *Id.* Under the panel's broader interpretation, "it would be impossible to conceive of any documents even tangentially related to an employee benefit plan which would not fall within § 104(b)(4)'s scope." *Id.* at 691 (cleaned up).

The en banc Court held instead that section 104's disclosure requirements focus on "governing plan documents." *Id.* at 690 (quoting *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995)). "The relevant documents are those documents that provide individual participants with information about the plan and benefits." *Id.* Specifically, section 104 requires disclosure of documents "that allow the individual participant to know exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." *Id.* (cleaned up). The Court thus adopted a narrow construction of the phrase "'other instruments under which the plan is established or operated,'" "limit[ing] [it] to documents that are similar in nature to the documents specifically listed in § 104(b)(4)." *Id.* at 691; *see also id.* ("§ 104(b)(4) requires the disclosure

of only the documents described with particularity and 'other instruments' similar in nature.").

In *Shaver*, the Court reinforced this reading of section 104. 332 F.3d at 1201. ("With respect to the statute before us, we have already declined to interpret it to require general disclosure. The question remains how narrowly we interpret the statute.") (internal citation omitted). Applying the *ejusdem generis* canon, the Court explained that "the broad term, 'other instruments,' should be limited to the class of objects that specifically precedes it"—that is, "only legal documents that describe the terms of the plan, its financial status, and other documents that restrict or govern the plan's operation." *Id.* at 1202. The Court reaffirmed *Hughes*' rule that "instruments" refers to "documents that provide individual participants with information about the plan and benefits." *Id.* (quoting *Hughes*, 72 F.3d at 690). Thus, documents that "at most relate only to the manner in which the plan is operated" need not be disclosed. *Id.*

This Court continues to follow *Hughes* and enforce disclosure obligations for section 104 that are tailored to enabling the participant to understand his benefits and rights under the plan. *See Est. of Barton v. ADT Sec. Servs. Pension Plan,* 820 F.3d 1060, 1067 (9th Cir. 2016) ("[Section 104's] function [is] to ensure that an individual is duly informed of basic information relating to his pension plan[.]"); *Becker v. Williams,* 777 F.3d 1035, 1039 (9th Cir. 2015) (section 104 "includes only those

documents that elucidate exactly where the participant stands with respect to the plan") (cleaned up).

Although the Ninth Circuit reads section 104 to impose relatively limited disclosure obligations, that does not mean a plan participant lacks other avenues to request documents that fall outside section 104's scope. "ERISA's central policy goal is to protect benefit plan participants 'by requiring the disclosure and reporting to participants and beneficiaries of financial and other information and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2009) (alteration marks omitted) (quoting 29 U.S.C. § 1001(b)). And Congress has created "an elaborate scheme" for disclosure," of which section 104 is only a part. *Curtiss-Wright Corp.*, 514 U.S. at 83. For example, ERISA section 503, 29 U.S.C. § 1133, which governs claims procedures for adverse benefit decisions, creates separate disclosure requirements for appeals of such decisions. *See* 29 C.F.R. § 2560.503-1(h)(2)(iii) (regulation implementing section 503 requires providing claimant "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits"). This disclosure obligation operates separately from section 104. *See Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016) (failure to follow procedures required by 29 C.F.R. § 2560.503-

1(h)(2)(iii) does not give rise to [section 104-related] penalties under [section 502(c)(1)]).

Looking at the judgment below, the district court properly articulated Circuit precedent. The district court:

- recognized that the Ninth Circuit "narrowly interpret[s] the disclosure requirements of Section 104(b)(4)";
- explained that under *Hughes* "the documents contemplated by § 104(b)(4) are those that allow the individual participant to know exactly where he stands with respect to the plan" and "other instruments" are "limited to documents that are similar in nature to the documents specifically listed in § 104(b)(4), meaning those which describe the terms and conditions of the plan, as well as its administration and financial status";
- and understood that under *Shaver* the "other instruments" clause is limited because *Hughes* calls for a narrow reading of the documents that precede it. 1-ER-41–42 ¶¶ 124, 126–27 (cleaned up).

This is precisely what the Ninth Circuit requires.

Zavislak claims that the district court's articulation of Ninth Circuit precedent was flawed because it relied on *Hively v. BBA Aviation Ben. Plan*, 331 F. App'x 510 (9th Cir. 2009), as the "pivotal basis" for its ruling. AOB at 34. For starters, *Hively*

was a straightforward application of this Court's precedents in *Hughes* and *Shaver*—so much so that the panel did not think it even warranted a published disposition. *Hively*, 331 F. App'x 510. More importantly, the district court acknowledged that this decision was not "decisive," 1-ER-43 ¶ 129, but explained that it would use the decision as "guidance" in the face of Zavislak's heavy reliance on non-authoritative out-of-circuit cases. 1-ER-43 ¶ 129; *id.*, n.11. Aside from two citations to *Hively* in its analysis, 1-ER-43 ¶ 130; 1-ER-50 ¶ 151, the district court relied on *Hughes* and *Shaver* to govern its determinations. 1-ER-41–56 ¶¶ 124–73. The district court's citations to *Hively* did not affect its findings under the proper legal test. *See infra* at 33-36.

Thus, *Hively* was not "the pivotal basis for a legal ruling by a district court." *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020). The district court properly used it as guidance for the application of settled legal principles, just as this Court has permitted. *Id.* ("memorandum dispositions can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice"); *see also* Circuit Rule 36-3(b).

**2. The Ninth Circuit's narrow reading of section 104 is reflected in lower court decisions.**

It is no surprise then that courts in this Circuit regularly impose limited disclosure obligations under section 104, especially when it comes to third-party

contracts like administrative services agreements. For example, in *Hively v. BBA Aviation Benefit Plan*, No. 3:05-CV-214 TMB, 2007 WL 9718331 (D. Alaska June 28, 2007), *aff'd*, 331 F. App'x 510 (9th Cir. 2009), the district court found that an administrative services agreement was not subject to disclosure under section 104 because "the agreement did not create any rights in favor of plan beneficiaries, but was simply an administrative services contract creating rights and obligations between" the plan provider and claims administrator. *Id.* at *3. The agreement "relate[d] 'only to the manner in which the plan is operated,'" and section 104 did not require disclosure. *Id.* (quoting *Shaver*, 332 F.3d at 1202); *see also id*. ("it does not establish any rights of Plan participants and beneficiaries").

This Court affirmed. *Hively v. BBA Aviation Ben. Plan*, 331 F. App'x 510 (9th Cir. 2009). "The Agreement govern[ed] the relationship between [the plan provider and claims administrator], not the relationship between the plan participants and the provider," and "[d]ocuments which 'relate only to the manner in which the plan is operated' are not subject to disclosure under [section 104(b)(4)]." *Id.* at *1 (quoting *Shaver*, 332 F.3d at 1202).

*Hively* is in line with numerous district court decisions in this Circuit. *See, e.g.*, *Truong v. KPC Healthcare, Inc.*, No. 8:23-CV-01384-SB-BFM, 2024 WL 4867558, at *5 (C.D. Cal. Sept. 9, 2024) ("controlling law requires a narrow reading of the disclosure provision" and did not require disclosure of a confidential third-

party transaction valuation report that did not inform participant of her benefits or where she stood with respect to plan); *Metaxas v. Gateway Bank F.S.B.*, No. 20CV01184EMCDMR, 2022 WL 972039, at *2 (N.D. Cal. Mar. 31, 2022) (section 104 requires disclosure of only "certain foundational plan documents"); *Penwell v. Providence Health & Services*, No. 2:19-CV-01786-RAJ, 2021 WL 1222663, at *4 (W.D. Wash. Mar. 31, 2021) (administrative services agreements "d[id] not inform Plaintiffs of *their* benefits under the plan" and "could not be used to determine any out-of-pocket expense for any of the Plaintiffs in the absence of an actual claim" even though they may provide pricing information and impact fees); *Gurasich v. IBM Ret. Plan*, No. 14-CV-02911-DMR, 2016 WL 362399, at *12 (N.D. Cal. Jan. 29, 2016) (third-party agreement selling portion of plan administrator's business referenced in plan did not "change[] the terms of the Plan itself" and did not "provide[] information necessary for the calculation of benefits," and thus, plan was "operated under" agreement but not "operated according to" it); *Corby v. Unum Life Ins. Co. of Am.*, No. C 09-5890 WHA, 2010 WL 3768040, at *9 (N.D. Cal. Sept. 21, 2010) (disclosure of third-party contracts not required because "[t]here is no evidence that [plaintiff] is missing any information" on where she stands with respect to plan).

These district court decisions also recognize that because the question under section 104 is whether the participant has been informed of where he stands with

respect to the plan, plan administrators need not furnish duplicative or unnecessary documents. That is, where the already-furnished documents sufficiently advise a beneficiary of his basic rights and benefits under a plan, the plan administrator has fulfilled its statutory obligation and need not produce ancillary documents that do not provide material, additional information to that end. *See, e.g.*, *Penwell*, 2021 WL 1222663, at *3–4 (W.D. Wash. Mar. 31, 2021) (information in undisclosed documents "was made available to Plaintiffs through summary plan descriptions that were provided"); *Hively,* 2007 WL 9718331, at *3 (plan documents supplied to plaintiffs fully explained benefits to them); *Corby*, 2010 WL 3768040, at *9 (N.D. Cal. Sept. 21, 2010) ("There is no evidence that she is missing any information" to know where she stands with respect to plan); *see also* 1-SER-112–13 ¶¶ 46–48; 1-SER-117–18 ¶¶ 57–59 (explaining that under industry standards, documents with duplicative information do not require disclosure).

**3. Zavislak's interpretation of section 104 is irreconcilable with this Court's precedent.**

Zavislak presents his reading of section 104 as a faithful understanding of Ninth Circuit precedent. Far from it. Zavislak offers an interpretation of section 104 that directly conflicts with this Court's precedent. If accepted, it would result in the limitless disclosure regime the en banc Court rejected in *Hughes*.

Zavislak asserts that *Hughes* affirmatively states that a plan "contract" is within the "expressly listed documents" of section 104 and thus any "contract"

relating to the plan must be disclosed without analyzing whether it would inform the beneficiary about his rights and obligations. AOB at 35. This argument directly collides with *Hughes*. At no point did *Hughes* state that any "contract" is a specifically enumerated document to be produced automatically. 72 F.3d at 690–91. To the contrary, the Court explicitly stated that "[t]he relevant documents are those documents that provide individual participants with information about the plan and benefits." *Id.* at 690 (documents covered by section 104 must help participant know "what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.") (citation and internal quotation marks omitted). Without that functional analysis, section 104 lacks any "limiting principle." *Id.*

Because *Hughes* does not say what Zavislak alleges, he simultaneously (and contradictorily) argues that *Hughes* and *Shaver* do not apply to "contracts" at all because the holdings of those cases were directed to section 104's "other instruments" clause. AOB at 10. But *Hughes* and *Shaver* did not limit their holdings to only one clause of section 104. Instead, *Hughes* instructs that the documents contemplated by section 104 are those "that provide individual participants with information about the plan and benefits" and "allow the individual participant to know exactly where he stands with respect to the plan." 72 F.3d at 690 (cleaned up). It categorically

rejected a broad, general disclosure requirement in favor of a specific one that ensures plan participants know what their benefits are. *Id.* at 690–91. *Shaver* confirms this reading of *Hughes*. The *Shaver* Court construed the "other instruments" clause in light of the preceding documents listed in section 104 and reasoned that because *Hughes* read the category of preceding documents (including "contracts") in a narrow fashion, the "other instruments" clause must be narrowly construed as well. 332 F.3d at 1202. *Shaver* could not have provided its limited reading of the "other instruments" clause unless *Hughes* had first adopted such a reading of the rest of section 104. *See id.* at 1201 ("With respect to the statute before us, we have already declined to interpret it to require general disclosure."). Subsequent decisions confirm this understanding of *Hughes* and *Shaver*. *See Becker*, 777 F.3d at 1039 (reaffirming a narrow interpretation of the disclosure of all documents under section 104).

If Zavislak's reading of section 104 and this Court's precedent were correct, certainly some Ninth Circuit panel or district court decision would have adopted that position. So it is telling that Zavislak relies almost entirely on out-of-circuit decisions. AOB at 15-21. That is because Zavislak seeks a return to the approach of the original *Hughes* panel opinion that the en banc court subsequently rejected. *See supra* at 36.

Zavislak may dislike this Court's precedent and think it is incorrect, but he cannot ask the Court to disregard its own precedent. Circuit precedent is binding "in the absence of intervening higher authority that is clearly irreconcilable with our circuit precedent." *In re Amy*, 710 F.3d 985, 987 (9th Cir. 2013) (citation and internal quotation marks omitted). A decision from another circuit "is not intervening higher authority and does not authorize us to abandon a prior panel opinion." *Id*. (citation and internal quotation marks omitted).

When Zavislak turns from the "contracts" clause to the "other instruments" clause, he likewise reads *Hughes* and *Shaver* to impose the "critical to the operation of the plan" standard rejected by *Hughes.* 72 F.3d at 690 (citation and internal quotation marks omitted). For example, he claims that "other instruments" that "directly bear[] on the establishment and operation of the Plan" must be disclosed. AOB at 31. This "directly bears" standard is not found in *Hughes* or *Shaver* and ignores that those cases limit section 104 to documents that inform the beneficiary about his rights and benefits under the plan. *See Shaver*, 332 F.3d at 1202; *Hughes*, 72 F.3d at 690.

By cherry-picking phrases divorced from this important context, Zavislak develops factors that effectively call for the disclosure of any document that touches the Plan or references benefits. AOB at 58. But documents that "at most relate only to the manner in which the plan is operated" need not be disclosed. *Shaver*, 332 F.3d

at 1202; *see also Hughes*, 72 F.3d at 691 (rejecting interpretation that calls for disclosure of "any documents even tangentially related to an employee benefit plan") (citation and internal quotation marks omitted). Zavislak thus impermissibly asks for a different standard than the one this Court has already adopted.

* * *

Disclosure obligations under section 104 are well-established in this Circuit. Zavislak's reading of section 104 cannot be reconciled with Circuit precedent and must be rejected.

### C. The district court correctly found that the CAAs and Ancillary Documents were not subject to disclosure under section 104.

Because the district court articulated the proper standard for section 104's disclosure obligation, the next question is whether the court properly applied the facts to the law when it concluded that Netflix was not required to disclose any of the CAAs and Ancillary Documents under section 104. To succeed on appeal, Zavislak must show that the court's factual findings regarding the documents' contents and the information they conveyed were clearly erroneous. Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous…."); *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573-74 (1985) ("In applying the clearly erroneous standard . . . [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though

convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.") (citation and internal quotation marks omitted); *see also id.* at 574 ("This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts."). Applying that standard, the district court considered the content of each document, expert opinions, industry standards, and testimonial evidence—including Zavislak's own admissions—and correctly concluded that the CAAs and Ancillary Documents were not within the scope of section 104 disclosures.

**1. The district court individually reviewed each document under controlling law and made appropriate findings.**

The district court analyzed the CAAs and Ancillary Documents under this Circuit's narrow interpretation of the statute. 1-ER-41-42 ¶ 124–27 (explaining that the Court is guided by the Ninth Circuit's narrow interpretation of the statute and specifically identifying *Hughes, Shaver,* and district court cases); 1-ER-41–42 ¶¶ 124–27; 1-ER-42-55 ¶¶ 128–69 (evaluating each document against Ninth Circuit authority). After an individual review of the four CAAs, the district court found that they "'relate only to the manner in which the plan is operated' and need not be disclosed under the statute." 1-ER-43 ¶ 130 (quoting *Shaver*, 332 F.3d at 1202); 1-ER-42–50 ¶¶ 128–51 (analysis of CAAs).

Similarly, after reviewing the eight Ancillary Documents, the district court found that these documents also need not be furnished. 1-ER-50 ¶ 152; 1-ER-53

¶ 163; 1-ER-55 ¶ 169. It reviewed Collective Health's internal documents—the Plan Matrix, PDCCs, and CSPDs, and found that these documents need not be furnished. *See* 1-ER-50–52 ¶¶ 152–58; 1-ER-51 ¶ 155 ("The Plan Matrix and the PDCC … 'relate only to the manner in which the plan is operated' and need not be furnished under the statute.") (quoting *Shaver,* 332 F.3d at 1202); 1-ER-52 ¶ 158 ("The CSPD is simply a signature page; it does not contain *any* benefits or any other information to assist Plaintiff in understanding 'where he stands in respect to the plan.'") (quoting *Hughes,* 72 F.3d at 690).

The district court likewise reviewed Anthem's PAL and found that it was properly incorporated by reference in Collective Health's SPD; Zavislak received the document free of charge upon request; and thus he failed to show this document were improperly withheld. 1-ER-52-53 ¶¶ 159–63.

Finally, the court reviewed Anthem's Medical Management Form, Utilization Review Process Document, Grievance & Appeals for Health and Plan Members Policy, and the Enterprise Grievances and Appeals Operational Guideline and found that these documents fall outside the scope of section 104 and would be more appropriately furnished under section 503 after an adverse benefit decision. 1-ER-53–54 ¶¶ 164–66; 1-ER-54 ¶ 167 ("It is not apparent how Anthem's internal Medical Management Form, the Utilization Review Process Document, or documents concerning Anthem's appeals policies could provide Plaintiff with information

about the plan and benefits when Anthem does not actually approve or deny any benefits."); 1-ER-55 ¶ 168 ("Zavislak has not specifically explained how these documents inform him of where he stands with respect to the Plan.").

### 2. The district court properly considered expert and testimonial evidence.

The district court was also presented with and relied on an Expert Report from Marcia Wagner who reviewed the documents under prevailing industry standards. *See* 1-SER-92-157. Ms. Wagner concluded that the seven Governing Plan Documents fulfilled the purpose of section 104, which is "to allow both participants and beneficiaries to review the method by which their plan was administered in order to arm them with the knowledge necessary to ensure compliance with ERISA," met the section 104 requirements in "a simple and straightforward format," "provide[d] a fulsome disclosure," and "are superior to other similar plan documents that [she has] reviewed." 1-SER-110–11 ¶¶ 42–44; 2-SER-280-503. She explained that section 104's term "contract" "does not necessarily encompass all contracts between the plan and third-party administrators ("TPAs") that render services to the plan." 1-SER-105 ¶ 29 (citing DOL Advisory Opinion 97-11A (April 10, 1997)). Similarly, "it is commonly recognized that contracts between plan administrators and plans' TPAs need not be disclosed to participants and beneficiaries as part of the response to an ERISA Section 104(b) document request." *Id.* Wagner also reviewed the Ancillary Documents and opined that they did not provide benefits information

beyond what was contained in the Governing Plan Documents, and explained that claims-processing information is distinct from the benefits information covered by section 104. 1-SER111-112 ¶¶ 45–46; 1-SER-114 ¶ 49.

The district court also reviewed Zavislak's testimonial admissions that he had never read the SPDs and had no concrete injury. *See, e.g.*, 3-SER-514 at 30:02–31:01; 3-SER-530 at 95:15–23; 3-SER-537 at 122:03–09. When asked what information he was missing, or how the seven Governing Plan Documents did not apprise him of his rights and benefits under the plan, he could not articulate an answer. 2-ER-152:8–153:23; 3-SER-514 at 30:02–31:01; 3-SER-530 at 95:15–23; 3-SER-537 at 122:03–09.

In light of this record, the district court correctly found that the CAAs and Ancillary Documents need not be produced and the seven Governing Plan Documents conveyed the Plan's benefits and obligations sufficiently to inform a participant where he stands with his rights, duties, and obligations under the Plan. Because ample evidence supports this finding, there is no clear error. *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1155 (9th Cir. 2007) (under clearly erroneous standard, "this court will not reverse if the district courts findings are plausible in light of the record viewed in its entirety") (citation and internal quotation marks omitted).

### 3. Zavislak fails to identify any clear error.

Zavislak ignores the substance of the district court's careful document analysis and instead creates charts—relying on his flawed re-interpretation of section 104 and out-of-circuit authority—that purportedly show why the CAAs and Ancillary Documents must be disclosed. AOB at 36–58. Zavislak does not identify any erroneous—much less clearly erroneous—factual findings under the governing standard but instead urges a wholesale de novo review of the documents based on his mistaken view of what section 104 requires.

***CAAs.*** First, Zavislak alleges that the four CAAs must be produced because they contain information relevant to benefits. *See* AOB at 43-44 (Rows A-H, K). But Zavislak wholly ignores the district court's findings that these agreements did not inform him of his benefits, did not "govern the relationship between the plan provider and the plan participants," and "relate only to the manner in which the plan is operated." 1-ER-43 ¶ 130 (citations and internal quotations marks omitted). Additionally, the district court found that the CAAs duplicated information that was disclosed in the seven Governing Plan Documents, so Netflix was not required to produce such documents. *See, e.g.*, 1-ER-45-46 ¶ 135 ("Zavislak has not shown that he is missing this information, as he was already provided it in the [Delta Dental] Employee Benefit Booklet" (citing *Corby*, 2010 WL 3768040, at *9 and *Penwell*, 2021 WL 1222663, at *3)); 1-ER-44 ¶ 132; 1-ER-47 ¶¶ 141–43 ("[A]nd to the extent

it references some benefits information, it is the same information that is already provided to Plaintiff in the VSP EOC."); 1-ER-49 ¶ 149.

As for any "new" information that Zavislak claimed was not available in the Governing Plan Documents, the district court determined the information was not benefits-related information governed by section 104, but was instead claims information.[7] Zavislak merely describes the contents of the CAAs and does not engage with the district court's factual findings. AOB at 51–66. He identifies no error at all, much less clear error.

Second, Zavislak asserts that the CAAs "control[]" the Plan, the Plan "operates according to the terms" of the CAAs, and the CAAs therefore should have been produced under out-of-circuit authority. AOB at 43–44 (Rows I, J, L). Yet the district court reviewed the CAAs and found that they "relate 'only to the manner in which the plan is operated,' as they govern the relationships between Netflix and its third-party service providers and need not be disclosed pursuant to Zavislak's

[7] *See* 1-ER-45 ¶ 133 (finding that **none** of the superfluous information in the Delta Dental Employee Benefit Booklet "is necessary to Plaintiff's determination of benefits or his understanding of where he stands with respect to the Plan."); 1-ER-46 ¶ 138 ("Nor does the Anthem Agreement provide any terms or benefits to participants or beneficiaries."); 1-ER-48 ¶ 145 (finding that the alleged supplemental claims information found in the VSP Agreement "relate only to claims processing and need not be furnished in response to a Section 104 request…particularly where, as is the case here, Plaintiff's request for such document is not tied to any benefit claim."); 1-ER-49 ¶ 149 ("The [Collective Health Agreement does not address benefits provided by the Plan. Information on benefits is provided in the SPD that is furnished to participants and beneficiaries.") (citations omitted).

Section 104 request." 1-ER-50 ¶ 151 (quoting *Shaver*, 332 F.3d at 1202). By contrast, the Wrap Plan is the governing document of the Plan and the SPDs outline all benefits offered. 1-ER-11 ¶ 31; 1-ER-12 ¶ 35. Zavislak fails to show why this finding was erroneous, let alone clearly erroneous.

***Ancillary Documents.*** Zavislak merely regurgitates the contents of the Ancillary Documents and conclusorily asserts that these documents were necessary to understand his benefits and where he stood with respect to the Plan. AOB at 57–63. He makes no effort to challenge the district court's record-based findings that these documents did not contain benefits information, only discussed how the Plan was operated, provided information he already had, or were more appropriately disclosed under other ERISA provisions. *See supra* at 41–44 (discussing district court's findings on Ancillary Documents). The district court properly applied the governing law to reject Zavislak's request for the Ancillary Documents.

### D. The district court erred in awarding penalties to Zavislak under section 502.

While the district court correctly held that Netflix complied with its disclosure obligations under section 104, it erred in imposing monetary penalties on Netflix. 1-ER-58 ¶¶ 182–83. The district court made two legal errors. First, it overlooked that the EBSA Orders suspended all time deadlines for sections 104 and 502. Thus, Netflix could not have violated the deadline imposed by section 502. Second, it ignored that Zavislak requested penalties from only February 26, 2021, onward.

Because the district court found that Netflix fulfilled its disclosure duty on February 24, 2021, it is impossible for any penalties to be awarded.

**1. The EBSA Orders suspended section 502's disclosure deadlines.**

Netflix could not be subject to statutory penalties under section 502(c)(1) because, at the time of the request, there was no legal basis for Netflix to violate the statute. The DOL's EBSA Orders suspended section 502(c)(1)'s disclosure deadlines, which excused Netflix from providing documents in response to section 104 requests within 30 days. With no deadline, Netflix's production of the Governing Plan Documents could not have been untimely.

ERISA section 502(c)(1)(B), 29 USC § 1132(c)(1)(B), which is in Title I of ERISA, governs the deadlines and penalties stemming from section 104(b)(4) disclosure requirements. It imposes a 30-day deadline for plan administrators to furnish documents in response to a section 104 request. 29 USC § 1132(c)(1)(B); *see also* 29 C.F.R. § 2575.502c-l. Section 502(c)(1)(B) permits penalties *only where* the plan administrator refuses to respond within 30 days, and further restricts per diem statutory penalties to be calculated "in the amount of up to [$110] a day from the date of such refusal" unless such failure "results from matters reasonably beyond the control of the administrator."[8] 29 U.S.C. § 1132(c)(1)(B); *see also* 29 C.F.R.

[8] Even apart from the EBSA Order suspending all deadlines, the statutory clause plainly comes into play. 29 U.S.C. § 1132(c)(1). An employer that is shut down by the Pandemic, an event beyond its control, plainly cannot respond in thirty days.

§ 2575.502c-l (increasing penalty from $100 per day to $110 per day).

Under ERISA section 518, the Secretary of Labor has authority to suspend ERISA's statutory requirements in case of a "Presidentially declared disaster." 29 U.S.C. § 1148. Specifically, for employee benefit plans, sponsors, and administrators, "the Secretary may, notwithstanding any other provision of law, prescribe, by notice or otherwise, a period of up to 1 year which may be disregarded in determining the date by which any action is required or permitted to be completed under [ERISA]." *Id.*

Due to the COVID-19 Pandemic and the President's disaster declarations, the DOL issued a series of orders suspending disclosure obligations, including those under sections 104(b)(4) and 502(c). EBSA Order 2020-01. EBSA Order 2020-01 extended timeframes for providing notices and disclosures under ERISA Tile I, which includes section 502, for up to one year. *Id.* Specifically, it stated:

> Subject to the duration limitation in ERISA section 518, an employee benefit plan and the responsible plan fiduciary will not be in violation of ERISA for a failure to timely furnish a notice, disclosure, or document that must be furnished between March 1, 2020, and 60 days after the announced end of the COVID-19 National Emergency, if the plan and responsible fiduciary act in good faith and furnish the notice, disclosure, or document as soon as administratively practicable under the circumstances.

*Id.* EBSA Order 2021-01 clarified that the disregarded period for required actions would last until the earlier of the expiration of the 1-year limit in Section 518 or 60

days after the end of COVID-19 National Emergency—that is, the delay for a required action could not exceed one year. *Id.* (EBSA Order 2021-01).

The EBSA Order applied here. Because it extended deadlines for disclosure obligations under Title I of ERISA, Netflix's time for responding to section 104 requests was extended, and Netflix could not have violated the 30-day deadline in section 502. *Id.* (EBSA Order 2020-01). And the district court found that, as required by the EBSA Order, Netflix acted in good faith and discharged its responsibilities to Zavislak as soon as administratively practicable under the circumstances. 1-ER-57 ¶ 178; *see also* 2-ER-282–86 (Mr. Hicks stayed in constant communication with Zavislak and diligently responded to his questions). Thus, as a matter of law, the district court could not impose monetary penalties. The district court wholly understood that the effect of DOL's action was a "suspension of deadlines during this time" yet inexplicably went on to award penalties. 1-ER-180 ¶ 180. That was error.[9]

**2. The district court ignored that Zavislak only requested penalties from February 26, 2021, onward.**

In addition to ignoring DOL's suspension of disclosure deadlines during the relevant period, the district court granted relief beyond what Zavislak even requested. The district court calculated penalties for the period running from January 4, 2021,

[9] Zavislak totally ignores the EBSA Orders in his brief. AOB at 63–65.

to February 24, 2021, yet Zavislak only alleged a violation, and penalties accruing, as of February 26, 2021—the date Netflix informed Zavislak that it had no other documents to disclose to him. 1-ER-56 ¶ 174; 1-SER-234 ¶ 536. For the first time on appeal, Zavislak argues—without support—that January 4, 2021, is the proper date for calculating penalties. AOB at 65. Because he did not argue that position below, Zavislak has waived it. *Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) ("These arguments are raised for the first time on appeal, and because they were never argued before the district court, we deem them waived."). And in any event, January 4, 2021, could never be the correct start date because under section 502(c)(1), penalties only start accruing *after* the time for compliance has run, which is 30 days after the request. *See* 29 U.S.C. § 1132(c)(1) (penalties may be awarded "from the date of such failure or refusal").

The question then is whether the district court was permitted to substitute its own theory of the case and modify the relief requested by Zavislak. According to the "principle of party presentation," a court must "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citations and internal quotation marks omitted); *id.* at 376 ("Courts are essentially passive instruments of government. They do not, or should not, sally forth each day

looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties.").

By the time Zavislak and Netflix submitted their cross-motions for summary judgment and proposed findings of fact and conclusions of law, Zavislak's position was clear: he was entitled to statutory penalties beginning on February 26, 2021, because he erroneously thought Netflix owed him documents beyond the seven Governing Plan Documents. 1-ER-56 ¶ 174. The district court acknowledged his position yet, without explanation, crafted a new theory of relief for Zavislak. 1-ER-56 ¶ 174; 1-ER-57 ¶¶ 180–81. It had no authority to litigate Zavislak's claim on his behalf. Had the district court adhered to Zavislak's request for penalties as of February 26, 2021, it would have awarded none because it rightly found that Netflix fulfilled its disclosure obligation on February 24, 2021, when it provided the seven Governing Plan Documents. 1-ER-57 ¶ 180.

In sum, given the suspension of disclosure deadlines and Zavislak's asserted theory of relief, the district court lacked any legal basis to impose statutory penalties against Netflix. Netflix could not have violated the suspended 30-day deadline, and imposition of penalties is inconsistent with the district court's finding that Netflix satisfied its disclosure obligation two days before Zavislak claimed he was even entitled to penalties.

## VII. CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court affirm the district court's holding that Netflix fulfilled its disclosure obligations and reverse the award of statutory penalties.

Dated: January 10, 2025

Respectfully submitted,

*/s/ Christopher J. Rillo*

CHRISTOPHER J. RILLO (#112009)
RAERANI REDDY (#340475)
CATHERINE SCOTT (#334420)
BAKER BOTTS L.L.P.
101 CALIFORNIA STREET
SUITE 3200
SAN FRANCISCO, CA 94111

AARON M. STREETT (#24037561)
CHRISTOPHER E. TUTUNJIAN (#24110460)
BAKER BOTTS L.L.P.
910 LOUISIANA STREET
HOUSTON, TX 77002

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I electronically filed the foregoing Appellee's Answering Brief/Cross-Appellant's Opening Brief with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered ACMS users, and that service will be accomplished by the appellate ACMS system.

*/s/ Christopher J. Rillo*
CHRISTOPHER J. RILLO

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-4156, 24, 4175

The undersigned attorney or self-represented party states the following:

- (●) I am unaware of any related cases currently pending in this court.
- ( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.
- ( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/ Christopher J. Rillo **Date** 01/10/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-4156, 24-4175

I am the attorney or self-represented party.

**This brief contains** 12,308 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ◉ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ________.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Christopher J. Rillo **Date** 01/10/2025

*(use "s/[typed name]" to sign electronically-filed documents)*